Jeffrey Goldfarb (State Bar No. 125596)
General Counsel
jgoldfarb@rutan.com
Robert O. Owen (State Bar No. 126105)
bowen@rutan.com
Ajit S. Thind (State Bar No. 268018)
athind@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone:  714-641-5100
Facsimile:   714-546-9035

Attorneys for Defendants
SUNLINE SERVICES GROUP, SUNLINE
TRANSIT AGENCY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AMERICAN CAB, LLC, a California limited liability company,, <br><br> Plaintiff, <br><br> v. <br><br> SUNLINE SERVICES GROUP; SUNLINE TRANSIT AGENCY, and DOES 1-100, inclusive, <br><br> Defendants. | Case No. CV 12-05552 GW (OPx) <br> Assigned to Honorable George H. Wu <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Hearing on Motion: <br> Date:          April 1, 2013 <br> Time:          8:30 a.m. <br> Courtroom:   10 <br><br> Date Action Filed:   June 26, 2012 <br> Trial Date:          May 14, 2013 |

Rutan & Tucker, LLP
attorneys at law

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 1, 2013 at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendants SunLine Services Group ("SSG") and SunLine Transit Agency ("STA") (collectively, "Defendants") will and hereby do move for summary judgment or, in the alternative, for partial summary judgment ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure on American Cab, LLC's ("Plaintiff") complaint for a violation of Section of the Sherman Act, 15 U.S.C. § 1.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place in-person on February 6, 2013, in Riverside, California.

This Motion is brought on the ground that Plaintiff cannot meet its burden of proof at trial and that Defendants are entitled to judgment as a matter of law. Defendants are entitled to judgment as a matter of law for the following two independent reasons:

1.      Defendants are incapable of "concerted" action and thus not subject to liability under Section 1 of the Sherman Act and

2.      Defendants are immune from liability under the Sherman Act pursuant to the State Action Immunity, which immunizes actions taken pursuant to state policy.

In the event the Court determines not to grant summary judgment in full, Defendants also respectfully move the Court, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, for an order adjudicating the facts set forth in the lodged Statement of Undisputed Facts and Conclusions of Law as being without substantial controversy so that such facts shall be deemed established for trial on any remaining claims for relief.

This Motion is based upon this Notice of Motion and Motion; the

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

-i-
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   Memorandum of Points and Authorities in Support Thereof; Defendants' Proposed

2   Statement of Undisputed Facts and Conclusions of Law; Defendants' Proposed

3   Judgment; Defendants' Proposed Order; the Request for Judicial Notice submitted

4   herewith; the Declarations of Robert Owen and Carolyn Rude submitted herewith;

5   all pleadings and papers on file in this action; any Reply papers filed in support of

6   this Motion; and such argument and further evidence as may be presented at the

7   hearing on this Motion.

8

9   Dated:  February 28, 2013                    RUTAN & TUCKER, LLP
                                                  JEFFREY GOLDFARB
10                                                ROBERT O. OWEN
                                                  AJIT S. THIND
11

12                                                By:        s/s
                                                     _____
13                                                   Ajit S. Thind
                                                     Attorneys for Defendants
14                                                   SUNLINE SERVICES GROUP;
                                                     SUNLINE TRANSIT AGENCY
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

-ii-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

I.    INTRODUCTION ...............................................................................1

II.   STANDARD OF REVIEW ..................................................................2

III.  THE COMPLAINT .............................................................................2

IV.   BACKGROUND ON DEFENDANTS..................................................3

V.    SECTION 1 OF THE SHERMAN ACT..............................................4

      A.   Concerted Action Requires More than Legally Distinct Entities.........................................................................................5

      B.   Actions of Municipalities Are Immune from Antritrust Liability if Committed Pursuant to State Policy........................7

      C.   Taxi Cab Regulation Pursuant to California Law.................9

VI.   ARGUMENT .......................................................................................12

      A.   STA And SSG Are Not Competitors and Have Identical "Centers of Decisionmaking" ...............................................12

      B.   SSG and STA Are Immune From Antitrust Claims Due To The State Action Immunity Afforded Taxicab Regulation ................13

VII.  CONCLUSION ....................................................................................15

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Needle, Inc. v. NFL,*
    130 S.Ct. 2201 (2010) ........................................................1, 5, 6, 7, 12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .................................................................................2

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984) .................................................................................6

*El v. Crain,*
    560 F.Supp.2d 932 (C.D. Cal. 2008) .....................................................2

*Golden State Transit Corp. v. Los Angeles,*
    726 F.2d 1430 (9th Cir. 1984) .....................................1, 9, 10, 11, 14

*Jones v. City of McMinnville,*
    244 Fed.Appx. 755 (9th Cir. 2007) .......................................................7

*Mercy-Peninsula Ambulance, Inc. v. County of San Mateo,*
    791 F.2d 755 (9th Cir. 1986) .................................................................8

*Parker v. Brown,*
    317 U.S. 341 (1943) .................................................................................7

*Shames v. Cal. Travel & Tourism Comm'n,*
    626 F.3d 1079 (9th Cir. 2010) .........................................................8, 14

*So. Motor Carriers Rate Conf., Inc. v. United States,*
    471 U.S. 48 (1985) ...................................................................................8

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.,*
    370 U.S. 19 (1962) ........................................................................6, 12, 13

*Town of Hallie v. City of Eau Claire,*
    471 U.S. 34 (285) .....................................................................................8

*Traweek v. San Francisco,*
    920 F.2d 589 (9th Cir. 1990) ..........................................1, 7, 8, 9, 13, 14

*/ / /*

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

-iv-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

**Page(s)**

**STATE CASES**

*Cotta v. City and County of San Francisco*,
   157 Cal. App. 4th 1550 (2007) ........................................................................... 10

*In re Application of Graham*,
   93 Cal. App. 88 (Cal. App. 1928) ........................................................................ 9

*In re Petersen*,
   51 Cal. 2d 177 (1958) ........................................................................................ 10

*Luxor Cab Co. v. Cahill*,
   21 Cal. App. 3d 551 (1971) ................................................................................ 11

**FEDERAL STATUTES**

42 U.S.C.
   section 12143 ..................................................................................................... 15
   section 12143(a) ................................................................................................... 3

**STATE STATUTES**

Government Code
   section 53075.5 ............................................................................................. 11, 14
   section 53075.5(d) ........................................................................................ 12, 14
   section 6502 ....................................................................................................... 12

Health and Safety Code
   section 1797.204 ................................................................................................. 8

Public Utilities Code
   sections 5351 et seq. ...................................................................................... 9, 11
   section 5353(g) ................................................................................................... 9

Vehicle Code
   section 21112 ................................................................................................ 11, 14

**RULES**

Federal Rules of Civil Procedure.
   rule 56(a) ............................................................................................................. 2

/ / /

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

**Page(s)**

**OTHER AUTHORITIES**

Sherman Act, ch. 647, 26 Stat. 209, as amended, 15 U.S.C.
     section 1 ...............................................................1, 2, 4, 5, 6, 7, 9, 10, 13, 14, 15

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1              <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.**     **INTRODUCTION**

3         Plaintiff American Cab, LLC ("Plaintiff" or "ACL") filed a complaint (the

4   "Complaint") against SunLine Services Group ("SSG") and SunLine Transit

5   Agency ("STA") (collectively, "Defendants"), both joint powers authorities, with

6   one cause of action for Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

7   ("Section 1").  ACL generally alleges that Defendants have acted in combination or

8   conspiracy in enacting regulations that harm ACL and other taxi companies.

9   (Complaint, § 23.)  ACL seeks injunctive relief against Defendants.  The Complaint

10   does not seek monetary damages.  (Complaint, Prayer For Relief.)

11         As described below, Defendants bring this motion for summary judgment, or

12   in the alternative, partial summary judgment, on Plaintiff's Complaint because there

13   are two independent reasons why Plaintiff cannot prevail as a matter of law and

14   judgment should be entered in favor of Defendants:

15            • First, Defendants, while separate legal entities, are not capable of

16               "concerted action" because they have the same "centers of

17               decisionmaking."  Both Defendants are made up of the same cities and

18               the County of Riverside.  Further, the STA Board of Directors and the

19               SSG Board of Directors, which govern the actions taken by the

20               agencies, ***are identical***.  Even high-level staff is the same.  (*Am.*

21               *Needle, Inc. v. NFL*, 130 S. Ct. 2201, 2208 (2010).)

22            • Second, Defendants are immune pursuant to the State Action Immunity

23               because the California legislature has afforded local agencies with

24               enormous power to regulate the activities of the taxi cab business.

25               (*Golden State Transit Corp. v. Los Angeles*, 726 F.2d 1430 (9th Cir.

26               1984) (*cert denied* 471 U.S. 1003 (1985), criticized on other grounds in

27               *Traweek v. San Francisco*, 920 F.2d 589, 591 (9th Cir. 1990).)

28         As discussed in more detail below, Defendants request that judgment be

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  entered in their favor.

2

3  **II.     STANDARD OF REVIEW**

4        A party may move for summary judgment if there is no genuine dispute as to

5  any material fact, and it is entitled to judgment as a matter of law.  (Fed. R. Civ.

6  P. 56(a).)  A party need not disprove the plaintiff's claims; it need only identify

7  those issues on which plaintiff cannot meet its burden of proof at trial.  (*Celotex*

8  *Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *El v. Crain,* 560 F.Supp.2d 932, 936

9  (C.D. Cal. 2008).)

10

11  **III.    THE COMPLAINT**

12        The gist of the Complaint is that SSG and STA are in some sort of a

13  conspiracy to reduce the revenue that can be earned by ACL.  Plaintiff alleges that

14  "[t]he General Manager and a majority of the employees and staff of STA and SSG

15  are the same and the separate existence between these two entities, in reality, does

16  not exist."  (Complaint, ¶ 9.)  Plaintiff further alleges that "[t]he members of SSG

17  and STA are nearly identical."  (*Id.* at ¶ 23.)  According to the Complaint, SSG and

18  STA violated Section 1 by:

19        • Prohibiting taxi companies from making arrangements for exclusive or
20           preferential service rights;

21        • Setting taxi cab rates;

22        • Setting the amount of taxi cab permits to each franchise;

23        • Controlling the advertising on taxi cabs;

24        • Controlling the location of taxi cabs stands;

25        • Accepting funding from Riverside County Transportation Commission
26           for offering paratransit services.

27  / / /

28  / / /

**Rutan & Tucker, LLP**
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

-2-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

## IV.   BACKGROUND ON DEFENDANTS

In 1977, nine Coachella Valley cities and the County of Riverside created STA, a joint powers authority, to provide and operate a public transportation system in the Coachella Valley through the operation of a bus system.  (Request for Judicial Notice ["RJN"], Ex. 1, p. 6; Declaration of Carolyn Rude ("Rude Decl."), Ex. A, p. 6.)  Under the STA Joint Powers Agreement, STA "shall be administered by a Board of Directors."  (RJN, Ex. 1, p. 7; Rude Decl., Ex. A, p. 7.)  In addition, the Board of Directors "shall have the common power to all parties, hereto, to own, operate and maintain a public transit system."  (RJN, Ex. 1, p. 9; Rude Decl., Ex. A, p. 9.)  As required by state and federal law, STA also provides Americans with Disability Act ("ADA") required parallel service in the form of a Dial-A-Ride program.[1]

In 1993, those *same* nine Coachella Valley cities and the County of Riverside formed SSG, another joint powers authority.  (RJN, Ex. 2, p. 28-29; Rude Decl., Ex. B, p.28-29. )  Just like STA, SSG "shall be administered by a Board of Directors . . . representing each of the parties to this Agreement."  (RJN, Ex. 2, p. 35; Rude Decl., Ex. B, p. 35.)  Similar to STA, "[a]ll of the powers and authorities of [SSG] shall be exercised by the Board of Directors."  (RJN, Ex. 2, p. 37; Rude Decl., Ex. B, p. 37.)

As described above, STA and SSG are governed by a board of directors. STA's Board of Directors is made up of the following:

[1]   See 42 U.S.C. § 12143(a) ["General rule: It shall be considered discrimination for purposes of section 202 of this Act [42 USCS § 12132] and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a public entity which operates a fixed route system (other than a system which provides solely commuter bus service) to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system."].)

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

-3-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

- For each city, a city councilmember;
- For the County of Riverside, a member of the County of Riverside Board of Supervisors.  (RJN, Ex. 1, p. 7-8; Rude Decl., Ex. A, p. 7-8.)

Pursuant to the SSG Joint Powers Agreement, each member municipality *must* use the *same* director from the STA Board of Directors to serve on the SSG Board of Directors.  (RJN, Ex. 2, p. 35; Rude Decl., Ex. B, p. 35.)  In addition, the principal office of SSG is that of STA.  (RJN, Ex. 2, p. 37; Rude Decl., Ex. B, p. 37.)  ***Therefore, while STA and SSG are legally distinct entities, they were formed by the same public entities, governed by the exact same directors, and have the same centers of decisionmaking.***

For example, the STA Board of Directors generally meets every fourth Wednesday of the month at 12:00 p.m.  (Rude Decl., ¶ 9.)  When it meets, and unless there is a joint meeting, the SSG Board of Directors' meeting begins immediately thereafter.  (*Ibid.*)  The transition between the two meetings is seamless because the identical directors serve both bodies!

In addition to the above, even several staff members share joint positions.  For instance, Mikel Oglesby serves as the general manager for both STA and SSG.  (Rude Decl., ¶ 8.)  The SSG Joint Powers Agreement actually requires use of the same general manager.  (RJN, Ex. 2, p. 40; Rude Decl., Ex. B, p. 40.)  Also, Carolyn Rude serves as the Clerk for both the STA and the SSG Board of Directors.  (Rude Decl., ¶ 2.)

## V.   SECTION 1 OF THE SHERMAN ACT

A violation of Section 1 of the Sherman Act requires three elements:

     1.    Concerted activity involving more than one actor;

     2.    An unreasonable restraint on trade; and

     3.    An effect on interstate or foreign commerce

"Every contract, combination in the form of a trust or otherwise, or,

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

-4-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   conspiracy, in restraint of trade" is made illegal by Section 1 of the Sherman Act,

2   ch. 647, 26 Stat. 209, as amended, 15 U.S.C. § 1.  Taken literally, the applicability

3   of Section 1 to "every contract, combination . . . or conspiracy" could be understood

4   to cover every conceivable agreement, whether it be a group of competing firms

5   fixing prices or a single firm's chief executive telling her subordinate how to price

6   their company's product.  "But even though, 'read literally,' [Section] 1 would

7   address 'the entire body of private contract,' that is not what the statute means."

8   (*Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201, 2208 (2010) ("*Am. Needle*").)

9          **A.     Concerted Action Requires More than Legally Distinct Entities**

10          In *Am. Needle*, the United States Supreme Court analyzed when legally

11   distinct entities can engage in "concerted action."  In 1963, National Football

12   League ("NFL") teams formed the National Football League Properties ("NFLP") to

13   develop, license, and market their intellectual property.  (*Id.* at 2207.)  In 2000, the

14   teams voted to allow NFLP to grant exclusive licenses to manufacture and sell

15   trademarked headwear for all 32 teams.  Plaintiff American Needle, Inc., was denied

16   such a license and sued, alleging the agreements between the NFL, its teams, NFLP,

17   and Reebok violated Sections 1 and 2 of the Sherman Act.  (*Ibid.*)  The district court

18   and Seventh Circuit Court of Appeals found that Section 1 liability could not apply,

19   because the teams were essentially a single entity, rather than a joint venture.  (*Id.* at

20   2207-2208.)

21          The Supreme Court began its analysis by reviewing the text of Section 1,

22   noting that "[n]ot every instance of cooperation between two people is a potential

23   'contract, combination . . . , or conspiracy, in restraint of trade.'"  (*Id.* at 2208.)  The

24   Supreme Court also described the distinction between Sections 1 and 2 of the

25   Sherman Act:

26          Section 1 applies only to concerted action that restrains trade.

27          Section 2, by contrast, covers both concerted and independent action,

28          but only if that action "monopolize[s]," 15 U.S.C. § 2, or "threatens

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

-5-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   actual monopolization," *Copperweld,* 467 U.S., at 767, 104 S. Ct.

2   2731, 81 L. Ed. 2d 628, a category that is narrower than restraint of

3   trade.

4   (*Id.* at 2208-2209.)  Nonetheless, "concerted action under § 1 does not turn simply

5   on whether the parties involved are legally distinct entities. ***Instead, we have***

6   ***eschewed such formalistic distinctions in favor of a functional consideration of***

7   ***how the parties involved in the alleged anticompetitive conduct actually operate.***"

8   (*Id.* at 2209, emphasis added.)

9       Although the Supreme Court previously used to treat cooperation between

10  legally separate entities, known as "intraenterprise conspiracy doctrine" as

11  necessarily covered by Section 1, it now called for a "more functional analysis."

12  (*Id.* at 2210.)  In *Am. Needle,* the Supreme Court reviewed its prior cases to establish

13  that this "more functional analysis" was appropriate.  (*Id.* at 2210-2211.)

14      For instance, in *Sunkist Growers, Inc. v. Winckler & Smith Citrus Products*

15  *Co.*, 370 U.S. 19 (1962), several agricultural cooperatives that were owned by the

16  same farmers were sued for violations of § 1 of the Sherman Act.  (*Id.* at 24-25.)

17  Applying a specific immunity provision for agricultural cooperatives, the Supreme

18  Court held that the three cooperatives were "in practical effect" one "organization,"

19  even though the controlling 12,000 farmers "have formally organized themselves

20  into three separate legal entities."  (*Id.* at 29.)  "To hold otherwise," the Supreme

21  Court explained, "would be to impose grave legal consequences upon organizational

22  distinctions that are of *de minimis* meaning and effect" insofar as "use of separate

23  corporations had [no] economic significance."  (*Ibid.*)

24      More recently, in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S.

25  752 (1984), the Supreme Court remarked that a parent corporation and its wholly

26  owned subsidiary "are incapable of conspiring with each other for purposes of § 1 of

27  the Sherman Act."  (*Id.* at 777.)  Because joint conduct by two such entities does not

28  "depriv[e] the marketplace of independent centers of decisionmaking," (*id.* at 769),

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

-6-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  an agreement between them cannot suffice for Section 1 purposes.

2          In *Am. Needle*, the Supreme Court summarized its review of relevant

3  precedent:

4          The key is whether the alleged "contract, combination . . . , or

5          conspiracy" is concerted action--that is, whether it joins together

6          separate decisionmakers.  The relevant inquiry, therefore, is whether

7          there is a "contract, combination . . . or conspiracy" amongst "separate

8          economic actors pursuing separate economic interests," [citation

9          omitted] such that the agreement "deprives the marketplace of

10         independent centers of decisionmaking," [citation omitted], and

11         therefore of "diversity of entrepreneurial interests," [citation omitted],

12         and thus of actual or potential competition, [citation omitted].

13  (*Am. Needle, Inc., supra,* 130 S.Ct. at 2211-2212.)  Ultimately, "[t]he question is

14  ***whether the agreement joins together 'independent centers of decisionmaking.'***

15  [citation omitted]. If it does, the entities are capable of conspiring under § 1, and the

16  court must decide whether the restraint of trade is an unreasonable and therefore

17  illegal one."  (*Id.* at 2212, emphasis added.)

18       **B.     Actions of Municipalities Are Immune from Antitrust Liability if**

19               **Committed Pursuant to State Policy**

20          As a general rule, the anticompetitive actions of a state are immune from the

21  reach of antitrust laws.  (*Traweek v. San Francisco*, 920 F.2d 589, 591 (9th Cir.

22  1990).)  This is known as the State Action Immunity.  It was created by the Supreme

23  Court in *Parker v. Brown,* 317 U.S. 341, 350-352 (1943).  However, the immunity

24  extends beyond just actions by the state.  Rather, a municipality's acts are also

25  immune, if authorized by state policy.  (*Traweek, supra,* 920 F.2d at 591.)

26          The Ninth Circuit applies a two-part test "to determine whether a 'clearly

27  articulated' state policy has authorized a municipality's anticompetitive actions."

28  (*Jones v. City of McMinnville*, 244 Fed.Appx. 755, 759 (9th Cir. 2007).)  "First, a

Rutan & Tucker, LLP
*attorneys at law*
2465/029659-0004
4918901.1 a02/28/13
-7-
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   court must determine whether the legislature authorized the challenged actions of

2   the [municipality]. Second, the court must determine whether the legislature

3   intended to displace competition with regulation." (*Traweek, supra,* 920 F.2d at

4   591-592.)  Nonetheless, "the Supreme Court has not required express authorization

5   of particular anticompetitive acts and has applied state action immunity when the

6   actions were a ***foreseeable*** result of a broader statutory authorization." (*Shames v.*

7   *Cal. Travel & Tourism Comm'n*, 626 F.3d 1079, 1083 (9th Cir. 2010), emphasis

8   added.)

9       For example, in *Town of Hallie v. City of Eau Claire*, neighboring towns filed

10  suit against the City of Eau Claire, arguing that the city held an unlawful monopoly

11  over sewage treatment services.  (471 U.S. 34, 37 (1985).)  The Court held that the

12  city's actions were immunized because they were a "foreseeable result" of the state

13  legislature's statutory authorization to municipalities to provide (or refuse to

14  provide) sewage services to unincorporated areas.  (*Id*. at 42.)  The Court again

15  noted that a legislature need not expressly state in the statute or legislative history

16  that it intends for the action to have anticompetitive effects, so long as the

17  legislature had contemplated the action that was taken:

18       We think it is clear that anticompetitive effects logically would result

19          from this broad authority to regulate.

20  (*Ibid.*)  The Court also rejected the contention that the city needed to show the state

21  had "compelled" it to act.  (*Id*. at 45; *see also So. Motor Carriers Rate Conf., Inc. v.*

22  *United States*, 471 U.S. 48, 58 (1985) ["The Midcal test does not expressly provide

23  that the actions of a private party must be compelled by a State in order to be

24  protected from the federal antitrust laws."]; *Mercy-Peninsula Ambulance, Inc. v.*

25  *County of San Mateo*, 791 F.2d 755, 758 (9th Cir. 1986) [Finding that Health and

26  Safety Code section 1797.204, relating to regulation of emergency medical services,

27  allows for "[v]irtually any anti-competitive effect, including exclusive contracts

28  with primary providers and elimination of backup ambulance services altogether."].)

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

-8-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

## C.    Taxi Cab Regulation Pursuant to California Law

Both California statutes and courts have made it clear that taxi cabs are subject to extensive local regulation.

In *Golden State Transit Corp. v. Los Angeles*, 726 F.2d 1430 (9th Cir. 1984) (*cert denied* 471 U.S. 1003 (1985), criticized on other grounds in *Traweek, supra*), a taxi cab company, like here, brought a complaint for violation of Section 1 of the Sherman Act against the City of Los Angeles when the City refused to renew its taxicab franchise.  The Ninth Circuit analyzed the case under the State Action doctrine.  The Court used a prior test and stated that "to prove that a policy is clearly articulated and affirmatively expressed, the City must demonstrate not only the existence of a state policy to displace competition with regulation, but also that the legislature contemplated the kind of actions alleged to be anticompetitive." (*Id.* at 1433.)  The Court found that the state had exercised control over taxi cabs pursuant to the Passenger Charter-Party Carriers' Act (Pub. Util. Code §§ 5351 et seq.). (*Ibid.*)  The Court also referenced Public Utilities Code section 5353(g):

This chapter does not apply to any of the following . . .

(g) Taxicab transportation service licensed and regulated by a city or county, by ordinance or resolution, rendered in vehicles designed for carrying not more than eight persons excluding the driver.

The Court further found that the "[California] legislature has determined that public transportation by taxicab should be regulated and that preferably the regulation should be handled by local government."  (*Id.* at 1434.)  The Court later concluded that "[t]he California Constitution and California's statutes show an affirmatively expressed and clearly articulated state policy to displace competition with regulation in the taxicab industry. The challenged actions of the City were taken pursuant to that policy and were contemplated by the legislature."  (*Id.* at 1434-1435; see also *In re Application of Graham*, 93 Cal. App. 88, 92 (Cal. App. 1928) ["It cannot be doubted that the city council has the authority to abolish taxicab stands from the

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

-9-

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

streets."]; *In re Petersen*, 51 Cal. 2d 177, 183 (1958) ["It seems obvious that, since a municipality may deny the use of its streets to all but one common carrier, it may validly direct that each of several taxicab owners use separate stands."].)  Therefore, the Court affirmed summary judgment in favor of the City of Los Angeles on the Section 1 claim.  (*Id.* at 1435.)

In *Cotta v. City and County of San Francisco*, 157 Cal. App. 4th 1550, 1560 (2007), the court of appeal made note of the broad regulatory powers that local agencies wield over the taxi cab business:

> Local authorities act pursuant to their police power in regulating virtually all aspects of the taxicab business, including who may operate a cab, how many cabs may be operated, how much cabs may charge, where cabs may travel, and where cabs may pick up passengers.  (See, e.g., *O'Connor v. Superior Court*, 90 Cal. App. 3d 107, 113–114 (1979) [153 Cal. Rptr. 306] [license or permit to operate a taxicab is granted by local government entity pursuant to police power]; *People ex rel. Freitas v. City and County of San Francisco*, 92 Cal. App. 3d 913, 923, 927 (1979) [155 Cal. Rptr. 319] [affirming City's power to regulate cabs]; *In re Petersen*, 51 Cal. 2d 177, 182–183 (1958) [331 P.2d 24] [affirming City's power to designate certain stands for the exclusive use of certain taxi companies in picking up passengers]; *People v. Buck*, 101 Cal. App. 2d Supp. 912, 915 (1950) [226 P.2d 87] [affirming power of county to prohibit cabs from operating in specific areas of county]; *People v. Galena*, 24 Cal. App. 2d Supp. 770, 775 (1937) [70 P.2d 724] (Galena) [affirming power of city supervisors to regulate taxicab stands to promote the convenience, safety, and welfare of the traveling public, and to adopt measures that will best assure adequate service and will be of the most practical benefit].)

Rutan & Tucker, LLP
attorneys at law
2465/029659-0004
4918901.1 a02/28/13
-10-
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  In *Luxor Cab Co. v. Cahill*, 21 Cal. App. 3d 551 (1971), the plaintiff cab drivers and
2  a taxi cab company challenged the city's issuance of additional cab medallions,
3  arguing that it "infringed on the vested rights of present certificate holders." (*Id*. at
4  558.) The court rejected the argument:

5      The use of streets by taxicabs is a privilege that may be granted or
6      withheld without violating either due process or equal protection.
7      This privilege may be granted exclusively or nonexclusively to render
8      public services [citation]. In any event, the granting or withholding of
9      a privilege based upon certificates of public convenience and
10     necessity presents no judicial controversy touching on the impairment
11     of vested rights [citation].

12  (*Ibid*.) The Passenger Charter-Party Carriers' Act (Pub. Util. Code §§ 5351 et seq.),
13  referenced above in *Golden State Transit Corp*., continues to authorize municipal
14  regulation of taxi cabs.

15      Further statutory support for municipal regulation lies elsewhere in the
16  California code. For instance, Vehicle Code section 21112 states:

17      Local authorities may by ordinance license and regulate the location
18      of stands on streets and highways for use by taxicabs and other public
19      carriers for hire in their respective jurisdictions . . .

20  In fact, Government Code section 53075.5 explicitly ***commands*** local regulation:

21      (a) Notwithstanding Chapter 8 (commencing with Section 5351) of
22      Division 2 of the Public Utilities Code, every city or county ***shall***
23      protect the public health, safety, and welfare by ***adopting*** an ordinance
24      or resolution in regard to taxicab transportation service rendered in
25      vehicles designed for carrying not more than eight persons, excluding
26      the driver, which is operated within the jurisdiction of the city or
27      county. (Emphasis added.)[2]

28

---

[2]  As already described, both SSG and STA are joint powers authorities made up of

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   The statute goes on to provide that the city or county must have a policy for entry

2   into the taxi cab business, an establishment of rates, and mandatory controlled

3   substance and alcohol testing.  However, a city or county may even adopt ***additional***

4   requirements for taxi cabs:

5       Nothing in this section prohibits a city or county from adopting

6       additional requirements for a taxicab to operate in its jurisdiction.

7   (Gov. Code § 53075.5(d).)

8

9   **VI.   ARGUMENT**

10      **A.    STA And SSG Are Not Competitors and Have Identical "Centers**

11             **of Decisionmaking"**

12      There is no dispute that STA and SSG are ***legally*** distinct entities.  However,

13  as the Supreme Court has repeatedly decided, that is not sufficient for them to be

14  capable of "concerted action."  Rather, the Court must analyze how the two entities

15  "actually operate" and if they have independent "centers of decisionmaking."  (*Am.*

16  *Needle, Inc. v. NFL*, 130 S.Ct. 2201, 2209, 2212 (2010).)  As is clear from the

17  identical entities that formed STA and SSG, as well as the identical directors that

18  govern them and mutual staff, STA and SSG lack independent centers of

19  decisionmaking and are incapable of concerted action.

20      As described above, STA and SSG ***were both formed by the same ten public***

21  ***entities***: nine cities and the County of Riverside.  STA and SSG exercise powers that

22  these cities and the County of Riverside would have otherwise exercised on their

23  own.  (Gov. Code § 6502.)  Further, rather than forming two separate entities, those

24  ten municipalities could have just formed one joint powers authority to utilize the

25  powers that both STA and SSG currently utilize.  Just as in *Sunkist Growers, Inc.,*

26

27  numerous Coachella Valley cities and the County of Riverside.  Pursuant to the Joint
    Exercise of Powers Act, they may exercise "any power common to the contracting

28  parties."  (Gov. Code § 6502.)  Therefore, both SSG and STA can utilize the powers
    provided to their members.

Rutan & Tucker, LLP
*attorneys at law*

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   *supra*, where 12,000 farmers created three legally separate cooperatives instead of

2   one, the fact that ten public entities created **two** joint powers authorities instead of

3   **one**, is of *de minimis* meaning and should not render Defendants liable for a

4   Section 1 cause of action.  (See 370 U.S. 19, 29.)

5           Most importantly, ***STA and SSG have the exact same directors on their***

6   ***Boards of Directors***.  And this is not mere coincidence; rather, it is ***required*** by the

7   terms of the SSG Joint Powers Agreement.  (RJN, Ex. 2, p. 35; Rude Decl., Ex. B,

8   p. 35.)  These ***identical*** ten individuals set policies and govern the actions taken by

9   ***both*** Defendants.  Further establishing their identical decisionmakers, STA and SSG

10  even have identical members of their high-level staff.  (Rude Decl., ¶¶ 2, 8.)  ***Even***

11  ***Plaintiff admits this***: "The General Manager and a majority of the employees and

12  staff of STA and SSG are the same and the separate existence between these two

13  entities, in reality, does not exist."  (Complaint, ¶ 9.)  Plaintiff further admits that

14  "[t]he members of SSG and STA are nearly identical."  (*Id.* at ¶ 23.)  By Plaintiff's

15  own admissions it is clear that STA and SSG cannot engage in concerted action

16  because of their similarities.

17          As a result, Defendants lack the "independent centers of decisionmaking"

18  required to engage in concerted action.  Because Defendants are not capable of

19  concerted action, Plaintiff's Section 1 cause of action fails.

20          **B.      SSG and STA Are Immune From Antitrust Claims Due To The**

21                  **State Action Immunity Afforded Taxicab Regulation**

22          Further, if even capable of concerted activity, the Court must analyze

23  Defendants' actions under the State Action Immunity.  "First, a court must

24  determine whether the legislature authorized the challenged actions of the

25  [municipality]. Second, the court must determine whether the legislature intended to

26  displace competition with regulation."  (*Traweek, supra,* 920 F.2d at 591-592.)  In

27  addition, "the Supreme Court has not required express authorization of particular

28  anticompetitive acts and has applied state action immunity when the actions were a

Rutan & Tucker, LLP
attorneys at law

2465/029659-0004
4918901.1 a02/28/13

1   *foreseeable* result of a broader statutory authorization." (*Shames v. Cal. Travel &*

2   *Tourism Comm'n*, 626 F.3d 1079, 1083 (9th Cir. 2010), emphasis added.)

3        Here, it is evident from multiple statutes and cases that STA and SSG are

4   immunized by the State Action Immunity.  Preliminarily, the application of the State

5   Action Immunity to municipal regulation of taxi cabs in California was ***already***

6   ***decided*** by the Ninth Circuit in *Golden State Transit Corp. v. Los Angeles*, 726 F.2d

7   1430 (9th Cir. 1984) (*cert denied* 471 U.S. 1003 (1985)), criticized on other grounds

8   in *Traweek, supra*).  There, the Ninth Circuit found that the City of Los Angeles was

9   immune from Sherman Act Section 1 liability based on the State Action Immunity

10  and affirmed summary judgment on behalf of the city.  (*Id.* at 1435.)  Like in

11  *Golden State*, the heart of ACL's Complaint is Defendants' regulation of the taxicab

12  industry.

13       As affirmed in *Golden State*, it is clear that the California legislature not only

14  authorized local agencies to regulate the taxi cab industry, ***it actually commanded it***.

15  The numerous statutes ***explicitly*** direct local agencies to adopt ordinances or

16  resolutions to regulate taxicabs.  (Gov. Code § 53075.5, Veh. Code § 21112.)  For

17  instance, Vehicle Code section 21112 explicitly states that public agencies may

18  regulate "the location of stands on streets and highways for use by taxicabs and

19  other public carriers for hire."  Further, while Government Code section 53075.5

20  lists *a few* required taxi cab regulations that must be adopted, it explicitly states

21  "[n]othing in this section prohibits a city or county from adopting ***additional***

22  requirements for a taxicab to operate in its jurisdiction."  (Gov. Code § 53075.5(d),

23  emphasis added.)  This provides local agencies with the ***broadest possible*** statutory

24  authorization to govern the taxi cab industry, as a part of their police power.

25       Pursuant to state law, Defendants have limitless authorization to regulate taxi

26  cabs, including ACL.  This regulation allows Defendants to commit the alleged acts

27  that ACL alleges constitute antitrust violations, such as regulating the location of

28  taxi cabs and their stands, setting rates, franchising, taxi cab advertising, and

Rutan & Tucker, LLP
*attorneys at law*

-14-

2465/029659-0004
4918901.1 a02/28/13

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1   prohibiting exclusive agreements.  In fact, many of these actions are explicitly called

2   out by statute.  Further, the A.D.A. *mandates* that STA provide parallel paratransit

3   service (42 U.S.C. § 12143), which STA does in the form of a Dial-A-Ride

4   program.  Therefore, STA cannot be liable for providing this service.

5        Altogether, it is clear that Defendants' actions are a "foreseeable result" of the

6   state legislature's broad statutory authorization to municipalities to regulate the taxi

7   cab industry.  As a result, both STA and SSG are immune from Section 1 liability

8   and ACL's Complaint fails.

9

10  **VII.   CONCLUSION**

11       For all the foregoing reasons, STA and SSG cannot be liable in the above

12  action and request judgment be entered in their favor.  They are incapable of

13  "concerted action" and even if they could conspire, the State Action Immunity still

14  immunizes their acts of regulating the taxi cab industry.

15

16  Dated:  February 28, 2013                RUTAN & TUCKER, LLP
                                             JEFFREY GOLDFARB
17                                           ROBERT O. OWEN
                                             AJIT S. THIND
18

19                                           By:_____s/s_____

20                                             Ajit S. Thind
                                               Attorneys for Defendants
21                                             SUNLINE SERVICES GROUP;
                                               SUNLINE TRANSIT AGENCY
22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
*attorneys at law*

-15-
DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT